UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:                                                    Chapter 11

                                                          Case No. 09-14820 (MG)
MRS. JOHN L. STRONG & CO., LLC,

                    Debtor.
----------------------------------------------------------------x

**ORDER ESTABLISHING SALE PROCEDURES, INCLUDING APPROVAL OF A TERMINATION FEE, ASSIGNMENT PROCEDURES AND NOTICING GUIDELINES IN CONNECTION WITH THE DEBTORS' PROPOSED SALE OF SUBSTANTIALLY ALL OF THEIR ASSETS, SUBJECT TO HIGHER AND BETTER OFFERS, FREE AND <u>CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES</u>**

Upon the application dated August 27, 2009 (the "Application") of Mrs. John L. Strong & Co., LLC. ("MJLS LLC") and Mrs. John L. Strong Co., Inc. ("MJLS Inc., and collectively with MJLS LLC, the "Debtors"), as debtors and debtors in possession, in their jointly administered cases, by and through their counsel, SilvermanAcampora LLP, seeking among other relief, the entry of an Order in accordance with Sections 105, 363 and 365 of Title 11 of the United States Code, as amended, (the "Bankruptcy Code"), and associated Federal Rules of Bankruptcy Procedure: (a) authorizing and approving the terms and conditions of a certain asset purchase agreement (the "APA") for a sale by and between the Debtors, as sellers, and 1929 Paper Company, LLC ("1929 Paper Company"), as buyer, of substantially all of the Debtors' assets, as well as the assumption and assignment of two associated unexpired leases of non-residential real property, for $350,000, subject to higher or subject to higher or better offers on the assets, in bulk or by lot, as may be tendered at a public auction sale (the "Auction"), to be held at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, **Courtroom 501**, New York, New York on **September 23, 2009, at 2:00 p.m.** (the "Auction"), free and clear of all liens, claims, encumbrances, security interests and other restrictions on transfer, with such interests to attach to the net proceeds of sale, if any, in the amount and priority as they currently exist, (b) authorizing the consummation of the transactions contemplated therein, (c) approving certain bidding procedures for the Auction (the "Bidding Procedures"); (d) approving a

termination fee in the amount of $25,000.00 (the "Termination Fee"); (e) fixing the date for a hearing on the sale for September 24, 2009, at 10:00 a.m. (the "Sale Hearing"), (5) approving the form, time and scope of notice of the Auction, and (6) granting related relief; and a hearing having been held on that part of the Application seeking approval of the Bidding Procedures and the Noticing Provisions before the Honorable Martin Glenn, United States Bankruptcy Judge, United States Bankruptcy Court, Southern District of New York, Alexander Hamilton Custom house, Courtroom 501, New York, New York 10004 on the 9th day of September, 2009 (the "Procedures Hearing"), at which time all parties in interest were afforded an opportunity to be heard; and upon the record of the Procedures Hearing which is incorporated herein by reference; and after due deliberation and consideration of all the facts and circumstances herein, and upon the affidavit of service of the Application on file with the Court, and the relief sought being determined to be in the best interest of the estates, and no further notice being necessary or required, it is

**ORDERED** that all capitalized terms used but not defined herein have the meanings ascribed to such terms in the Application; and it is further

**ORDERED**, that the Application is granted to the extent provided for herein and all other relief sought in the Application is carried pending the Sale Hearing; and it is further

**ORDERED**, that the notice of the hearing on the Bidding Procedures and Auction as given by the Debtors and their duly retained professionals is deemed adequate under the circumstances; and it is further

**ORDERED**, the offering of the Termination Fee to 1929 Paper Company in the amount of $25,000.00, as established at the Sale Hearing, is hereby approved and the Debtors shall be authorized and directed to pay that Termination Fee to 1929 Paper Company from the proceeds of the sale of the Assets at or subsequent to a closing actually occurring on that sale if, and only if, a party other than 1929 Paper Company is deemed to be the Successful Bidder (as defined in the annexed terms and conditions of sale) at the conclusion of the Auction; and it is further

**ORDERED,** the assignment procedures set forth in the Motion (the "Assignment Procedures") are hereby approved. Within one day after entry of this Order, the Debtors shall file an assignment schedule (the "Assignment Schedule") with the Court and serve such Assignment Schedule by overnight delivery on the non-debtor counterparties to those Contracts. The Assignment Schedule will include (i) the title of the Contract to be assumed, (ii) the name of the counterparty to the Contract, (iii) any applicable cure amounts, (iv) the identity of the assignee, and (vi) the deadline by which any such Contract counterparty must object. The adequate assurance package with respect to each Contract to be assumed and assigned shall be served on the non-debtor counterparty to such Contract contemporaneously with the Assignment Schedule, or as soon thereafter as possible; and it is further

**ORDERED,** that any objections to the assumption and/or assignment of any Contract identified on the Assignment Schedule, including to the cure amount set forth on such schedule, must be in writing, filed with the Court, and be actually received by counsel to the Debtors and counsel to 1929 Paper Company no later than September 21, 2009, at 12:00 noon (the "Assignment and Cure Objection Deadline"); and it is further

**ORDERED,** that if no objections are received by the Assignment and Cure Objection Deadline, then the assumption and assignment is authorized and the cure amounts set forth in the Assignment Schedule shall be binding upon the non-debtor party to the Contract for all purposes and will constitute a final determination of total cure amounts required to be paid by the Debtors in connection with the assignment to the Successful Bidder. In addition, each non-debtor party to such unexpired Contract shall be barred from objecting to the cure information set forth in the Assignment Schedule, including, without limitation, the right to assert any additional cure or other amounts with respect to the Contract arising or relating to any period prior to such assumption or assignment. If no objections to the assumption or assumption and assignment are received by the Assignment and Cure Objection Deadline, counsel for the Debtors may submit to the Court a

certificate of no objection and a form of order (collectively, the "Certificate of No Objection") granting the requested assumption and/or assignment of the Contract, and serve such Certificate of No Objection on the counterparty to the Contract. The order approving such assumption and/or assignment may then be entered by the Court twenty-four (24) hours after the Certificate of No Objection is filed; and it is further

**ORDERED,** that if a timely objection is received and such objection cannot otherwise be resolved by the parties, the Court may hear such objection at the Sale Hearing, provided the Assignment Schedule is served at least eleven (11) days prior thereto, otherwise such objection will be heard by the Court at a date to be determined. The pendency of a dispute relating to cure amounts will not prevent or delay the assumption or assumption and assignment of any Contracts. If an objection is filed only with respect to the cure amount listed on the Assignment Schedule, the Debtors may file a Certificate of No Objection as to assumption or assumption and assignment only and the dispute with respect to the cure amount will be resolved consensually, if possible, or, if the parties are unable to resolve their dispute, by the Court, in which case the Debtors shall pay the undisputed cure amount and escrow any reasonably disputed cure amount pending agreement of the parties or further order of the Court; and it further

**ORDERED,** the Debtors, at their sole discretion, may, prior to the filing of the Assignment Schedule, file with the Court a schedule of cure amounts with respect to the Debtors' Contracts (the "Cure Schedule"), and serve such Cure Schedule by overnight delivery on the non-debtor counterparties to those Contracts. The Cure Schedule will include (i) the title of the Contract to be assumed, (ii) the name of the counterparty to the Contract, (iii) any applicable cure amounts, (iv) the date from which the cure amounts are calculated (the "Assumption Date"), and (v) the deadline by which any such non-debtor counterparty must object; and it is further

**ORDERED,** any objections to the cure amounts set forth on the Cure Schedule must be in writing, filed with the Court, and be actually received by the by counsel to the Debtors, counsel to

the Committee, and counsel to 1929 Paper Company no later than ten (10) days after the Cure Schedule is mailed to the affected party (the "Cure Schedule Objection Deadline"); and it is further

**ORDERED,** that if no objections are received by the Cure Schedule Objection Deadline, the cure amounts set forth in the Cure Schedule shall be binding upon the non-debtor party to the Contract for all purposes and will constitute a final determination of total cure amounts required to be paid by the Debtors in connection with any assumption of the Contract as of the Assumption Date. In addition, each nondebtor party to such unexpired Contract shall be barred from objecting to the cure information set forth in the Cure Schedule, including, without limitation, the right to assert any additional cure or other amounts with respect to the Contract arising or relating to any period prior to the Assumption Date; and it is further

**ORDERED**, that any determination of cure amounts as set forth in the Cure Schedule shall be without prejudice to any of the Contract counter-parties' rights to object to the assumption or assumption and assignment of any Contract; and it is further

**ORDERED**, that if a timely objection is received and such objection cannot otherwise be resolved by the parties, the Court may hear such objection at the Sale Hearing, provided the Cure Schedule is served at least eleven (11) days prior thereto, otherwise such objection will be heard by the Court at a date to be determined; and it is further

**ORDERED**, that the Terms of Sale, annexed hereto, are approved in all respects; and it is further

**ORDERED** that an Auction will be held on **September 23, 2009 at 2:00 p.m.**, at United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, Courtroom 501, New York, New York, and the Debtors shall offer the Assets for inspection by appointment at reasonable times, requested by the interested party to the Debtors' retained professionals who will make such arrangements, so long as the request is made no less than forty-eight (48) hours prior to the requested inspection, provided, however, that the Debtor

may, at its discretion, schedule an open inspection on at least two dates prior to the Auction in lieu of inspections by appointment; and it is further

**ORDERED**, that a hearing will be held before the Honorable Martin Glenn of the United States Bankruptcy Court for the Southern District of New York, on **September 24, 2009, at 10:00 a.m.** (the "Sale Hearing"), to consider entry of an order, to be filed by the Debtors' attorneys prior to the Sale hearing (the "Sale Order"), authorizing the sale to 1929 Paper Company or such offeror that offers a higher or better bid for the Assets at the Auction; and it is further

**ORDERED**, objections, if any, to the relief sought in the Application, including but not limited to the sale of the Assets shall be filed with the Bankruptcy Court by September 21, 2009, electronically in accordance with General Order M-242 (General Order M-242 and the User's Manual for the Electronic Case Filing System may be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court) by registered users of the Bankruptcy Court's case filing system, and by all other parties in interest on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers), in accordance with General Order M-242, and must be and served on (i) SilvermanAcampora LLP, 100 Jericho Quadrangle, Suite 300, Jericho, New York 11753 (Attn: Robert Nosek, Esq.); (ii) the Office of the United States Trustee, 33 Whitehall Street, 22nd floor, New York, New York 10004 (Attn: Nazar Khodorovsky, Esq.); and Counsel to 1929 Paper Company at Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Jennifer Sharret, Esq.)

**ORDERED**, the Debtors shall (1) serve on or before September 10, 2009, by first class mail, a copy of this Order (the "Sale Notice") on the Service Parties (as defined in the Application), and (2) provide such additional notice of the Auction and the bid deadline through a targeted mailing to potential interested parties compiled by the Debtors, including, but not limited to, any interested party that contacted the Debtors, if any, regarding the Assets to be mailed or e-mailed on or before

September 11, 2009, with respective affidavits of service to be filed prior to the Sale Hearing.

**ORDERED**, that the Debtors be, and hereby are, authorized and directed to expend such funds necessary to effectuate the terms and conditions of this Order.

Dated: New York, New York
   **September 9, 2009**

                 **/S/ Martin Glenn**
                 Honorable Martin Glenn
                 United States Bankruptcy Judge

TERMS AND CONDITIONS OF SALE

1. These Terms and Conditions of Sale are being promulgated in connection with the proposed court authorized public sale of the Debtors' right, title, and interest in and to substantially all of the the Debtors' assets, including:, but not limited to, intellectual properties, including the trademarks for "Mrs. John L. Strong" and "Ready to Write", inventory, raw materials, non-leased furniture, fixtures, and equipment, dies owned by the Debtors, customer and marketing lists, and domain names (collectively, the "Assets"), which includes the assumption and assignment of certain unexpired non-residential real property leases for the Debtors' location at 699 Madison Avenue, New York, New York. The public auction sale has been approved by the United States Bankruptcy Court for the Southern District of New York at Bowling Green (the "Court"), where the Debtors' bankruptcy cases are pending.

2. The Debtors have entered into a stalking horse asset purchase agreement for the Assets, a copy of which accompanies these terms and conditions of sale. The Assets are being sold together,, but will also be offered by separate lots.

3. The initial opening bid shall be by 1929 Paper Company LLC ("1929 Paper Company") of $350,000 (the "Opening Bid").

2. If making a bid for all of the Assets, the initial minimum overbid shall be no less than the aggregate of (a) the Opening Bid, plus (b) $50,000.00, which includes the Termination Fee (**the "Minimum Overbid", i.e., $400,000)**. Following the Minimum Overbid, all subsequent bids must be increments of not less than twenty-five thousand ($25,000.00) in dollars over the prior bid on bids placed in bulk, and in increments of not less than five thousand ($5,000.00) over the prior bid on bids placed on separate lots, provided, however that for purposes of comparing bids at the Auction, any bid by 1929 Paper Company shall be deemed increased by $25,000 to account for the value to the Debtors of not having to pay the Termination Fee in the event 1929 Paper Company is the Successful Bidder (as defined below).

3. A "qualified bidder" is an individual or entity which must submit to counsel to the Debtors at SilvermanAcampora LLP, 100 Jericho Quadrangle, Suite 300, Jericho, New York 11753 (Attn: Robert Nosek, Esq.) no later than 5:00 p.m. on September 21, 2009 (the "Bid Deadline"): (i) a bid in writing accompanied by the identity of such bidder and that of an officer or authorized agent who will appear on behalf of such bidder (the "Bid")r; (ii) a good faith earnest money deposit by cashier's or certified check (made payable to the Debtors) or wire transfer of immediately available funds, (a) in the amount of $25,000.00 if the prospective bidder is bidding on the APA or another bulk sale of the Debtors' assets, or (b) in an amount equal to ten (10%) percent of the prospective bidder's Bid for single lots of assets (each, a "Bid Deposit"); (iii) evidence, satisfactory to the Debtors, that the bidder has the financial ability to satisfy its Bid in cash or by wire transfer; and (iv) evidence, satisfactory to the Debtors, that the bidder has the ability to close the

KL2 2618260.2

purchase no later than September 30, 2009; with a copy of the Bid to counsel to 1929 Paper Company at Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Jennifer Sharret, Esq.).

4. Among other things, the Bid must identify (i) the assets the bidder wants to acquire in conjunction with its bid, (ii) any executory contracts or unexpired leases that the bidder wants to acquire in conjunction with its bid, and (iii) the amount, denominated in U.S. dollars, of the bid (as defined in this paragraph "Qualified Bidder").

5. Only Qualified Bidders will be permitted to bid for the Assets. Upon execution of the APA, 1929 Paper Company will be deemed to have satisfied all requirements to be a Qualified Bidder.

6. The full amount of the Bid Deposit required herein will be payable by cashier's check, certified check, or wire transfer of immediately available funds to be deposited with Debtors' counsel (SilvermanAcampora LLP), and will be nonrefundable in the event that the bid is approved by the Bankruptcy Court. The Bid Deposit from the successful bidder will be applied as a credit against the purchase price paid by the successful bidder. At the conclusion of the Auction and upon approval by the Court of the winning bid, all Bid Deposits made by bidders other than the successful bidder will be returned promptly.

7. Bids at the Auction must be all cash, without financing or other contingencies. To the extent a Qualified Bidder intends to bid on executory contracts or unexpired leases, the Qualified Bidder will also be required to provide evidence of its ability to provide adequate assurance of future performance, and the Bid must provide for cash sufficient to cure of any existing defaults.

8. The Assets will be sold to the Qualified Bidder submitting the highest or best Bid, subject to the reasonable business judgment of the Debtors.

9. If a successful Qualified Bidder fails to close the purchase in accordance with the terms herein, it will forfeit its Bid Deposit and the Assets will be sold to the bidder submitting the next highest Bid (as approved by the Court at the Sale Hearing).

10. Unless otherwise provided for in the APA, the successful bidder (the "Successful Bidder") must pay the purchase price for the Assets to the Debtors by certified check, bank check, federal funds or wire transfer at the closing of title to the Assets (the "Closing"), and the Successful Bidder must close title to the Assets no later than September 30, 2009 (the "Closing Date"), at the office of the Attorney for the Debtors, SilvermanAcampora LLP, 100 Jericho Quadrangle, Suite 300, Jericho, New York 11753, although such date may be extended solely by the Debtors in its discretion.[1] All sales and use taxes due by the Successful Bidder, if any, shall be paid at closing by the Successful Bidder. **Time is of the Essence with respect to the Successful Bidder's obligation to pay the Balance of the Purchase Price on the**

---

[1] In the event 1929 Paper Company, or another qualified bidder bidding on the APA, is the Successful Bidder, the

**Closing Date.** The Successful Bidder shall be obligated to close title to the Assets and there is no contingency of any kind or nature that will permit the Successful Bidder to cancel these terms of sale other than the Debtors' inability to deliver title to the Assets. Anything to the contrary contained in these Terms and Conditions of Sale notwithstanding, the Debtors shall have the right in its sole and absolute option to adjourn the Closing Date in order to remedy any defect to title.

11. The Assets are being sold in accordance with 11 U.S.C. Section 363, "AS IS", "WHERE IS" in its condition on the Closing Date, <u>without</u> any representations, covenants, guarantees or warranties by the Debtors <u>of any kind or nature whatsoever</u> (except to the extent provided for In the APA, but then only to the counter party to the APA), and free and clear of any liens, claims or encumbrances of whatever kind or nature, with such liens, if any, to attach to the proceeds of sale. By signing these Terms of Sale, all bidders acknowledge that they have had the opportunity to review and inspect the Assets and the form of the Bill of Sale and the Assumption and Assignment Agreement that the Debtors will execute to convey the Assets and will rely solely thereon and on their own independent investigation and inspection of the Assets in making their Bid. Neither the Debtors nor any of its representatives make any representations or warranties with respect to permissible uses of the Assets. All bidders acknowledge that they have conducted their own due diligence in connection with the Assets, and are not relying on any information provided by the Debtors or its professionals.

12. The Debtors shall convey the Assets by delivery of a Bill of Sale and Assumption and Assignment Agreement.

13. Neither the Debtors, Debtors' counsel nor other retained professionals, nor the estates of the Debtors are liable or responsible for the payment of fees of any broker that has not previously been approved by Order of the Court.

14. It is expressly understood that the Debtors shall <u>not</u> incur any cost or expense whatsoever in connection with the sale of the Assets, unless otherwise provided for in the APA if the Successful Bidder adopts the APA in its entirety as part of its Bid, and the Successful Bidder herewith undertakes to pay any such expense of whatever kind or nature even those costs and expenses which are payable by the Seller pursuant to any law or statute, including but not limited to, sales or use tax.

15. Nothing contained in this Offer and Terms and Conditions of Sale is intended to supersede or alter any provisions of the Title 11 of the United States Code (the "<u>Bankruptcy Code</u>") or otherwise limit or interfere with the jurisdiction of the Court. All of the terms and conditions set forth in this Offer and Terms and Conditions of Sale are subject to modification as may be directed by the Debtors or by the Court and subject to higher and better offers to be determined in the sole discretion of the Debtors. The Debtors reserve the right to modify the terms and conditions of sale

---

provisions herein concerning the Closing shall be deemed modified consistent with the closing provisions in the APA.

at the public sale or thereafter to maintain consistency with the provisions of the Bankruptcy Code and/or prior orders of the Court.

16. These Terms and Conditions of Sale will be read into the record, or specifically incorporated by reference, at the public sale of the Assets. By making a bid for the Assets, all bidders will be deemed to have acknowledged having read this Offer and Terms and Conditions of Sale and having agreed to be bound by them.

17. If the Debtors are unable to deliver title to the Assets in accordance with these terms of sale for any reason whatsoever, the prospective purchaser will have no recourse against the Debtors, Debtors' counsel or any Broker or Auctioneer previously approved by Order of the Court.

18. The Debtors reserve their rights to withdraw some or all of the Assets from sale, subject only to the terms of the APA, either prior, or subsequent to the sale, for any reason whatsoever, as it, in its sole and absolute discretion, deems necessary or appropriate.

19. The sale of the Assets is subject to confirmation by the Debtors and the Court. The Debtors shall notify the successful bidder at the close of the Auction that its offer has been accepted as the highest or best offer for the Assets, and that the Debtors will go forward with seeking approval of the Court.

20. By participating in the Auction, all bidders consent to the jurisdiction of the Court to determine such disputes under the Debtors' pending cases. Any disputes concerning the sale of the Assets shall be determined by the Court which shall retain sole and exclusive jurisdiction over all matters relating to the Assets and the sale contemplated by these Terms and Conditions of Sale.

21. Pursuant to Bankruptcy Rule 6004-1 no appraiser, auctioneer or officer, director, stockholder, agent, employee or insider of any appraiser of auctioneer, or relative of any of the foregoing, shall purchase, directly or indirectly, or have a financial interest in the purchase of, any property of the estate that the appraiser or auctioneer has been employed to appraise or sell.

## MEMORANDUM OF SALE

The undersigned, this ____ day of September 2009, makes an offer to purchase the Assets for the sum of _____DOLLARS ($_____) and hereby promises and agrees to comply with the terms and conditions of sale of the Assets, as set forth in the annexed Terms and Conditions of Sale.

OFFEROR/BIDDER:

By: _____
Name:
Title:

Address:

Telephone:

Facsimile:

E-mail:

OFFEROR/BIDDER'S COUNSEL:

Name:

Address:

Telephone:

Facsimile:

E-mail: